IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 11-20140-11-rdb |
| ICOP DIGITAL, INC. | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S EXPEDITED MOTION TO APPROVE (I) LETTER OF INTENT AND PURCHASER PROTECTION PROVISIONS, (II) SALE PROCEDURE AND FORM OF NOTICE, AND (III) CERTAIN BID PROTECTIONS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING UNLESS THE PARTIES AND THE COURT AGREE OTHERWISE. THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THE DEBTOR HAS REQUESTED AN EXPEDITED HEARING ON THIS MOTION.**

ICOP Digital, Inc. ("**ICOP**"), the debtor-in-possession ("**the "Debtor**"), files this Expedited Motion to Approve (i) Letter of Intent and Purchaser Protection Provisions, (ii) Sale Procedure and Form of Notice, and (iii) Certain Bid Protections.

## Nature of the Motion

1. The Debtor has entered into a written agreement to sell substantially all of the assets and operations of the bankruptcy estate of the Debtor to Safety Vision, LLC, a Texas limited liability company or to such other parties as Safety Vision may assign its rights under the Asset Purchase Agreement (as defined herein)(together with Safety Vision, LLC, such parties are

referred to herein as "**Safety Vision**"), free and clear of all liens, claims, interests and encumbrances under 11 U.S.C. § 363(f) for (i) a total cash payment of $800,000.00; and (ii) fifty percent (50%) of all uncollected accounts receivable as of closing. The specific terms of the sale are set forth in greater detail below. The agreement between the Debtor and Safety Vision is subject to higher and better offers. In order to induce Safety Vision to serve as the "stalking horse" bidder in the sale process, the Debtor has agreed to, and seeks approval of, the LOI (as hereinafter defined), a sale procedure and form of notice and certain bid protections as set forth below.

## Jurisdiction and Venue

2. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 1557 and 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409(a).

## Background

3. On January 21, 2011, ("**the Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code ("**the Bankruptcy Code**") in the United States Bankruptcy Court for the District of Kansas, Kansas City Division ("**the Court**").

4. The Debtor has continued in possession of its property and has continued to maintain control of its business and assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee has yet been established.

5. Prior to the Petition Date, the Debtor engineered and marketed mobile video systems for law enforcement, the military and homeland security, providing its services on a national basis. The Debtor maintained its corporate and business offices in Lenexa, Kansas.

6. ICOP Digital, Inc., is the surviving corporate entity of a series of corporations starting with the 1998 formation of Bail Corporation. The initial Articles of Incorporation were filed by Bail Corporation (**Bail**), a Colorado Corporation, on or about April 8, 1998, with the Colorado Secretary of State. Bail changed its name to Vista Exploration Corporation (**Vista**) on or about August 13, 2001. Vista established ICOP Acquisition Corporation, a Colorado Corporation, as a wholly owned subsidiary by filing with the Colorado Secretary of State Articles of Incorporation on or about January 9, 2004.

7. ICOP Digital, Inc., was created as a Nevada corporation on or about May 24, 2002. ICOP Acquisition Corporation, acquired ICOP Digital, Inc., through the filing of Articles of Merger on or about January 13, 2004, in exchange for shares of Vista, its parent corporation. The Articles of Merger also provided that the separate corporate existence of ICOP Acquisition Corporation would cease effective January 13, 2004, upon the filing of the Articles of Merger. Vista Exploration Corporation continued as the sole entity doing business as ICOP Digital, Inc., a Colorado corporation. On or about November 12, 2004, Vista Exploration filed amendments to its Articles of Incorporation formally changing its name to ICOP Digital, Inc.

8. ICOP is a publicly traded company, with more than 3000 shareholders. Its President and its Chairman/CEO are Laura Owen and David Owen, respectively.

9. During mid to late 2010, ICOP determined that its financial condition had deteriorated to the point where it could no longer generate sufficient cash flow to maintain its operations. It therefore, commenced efforts to locate a viable purchaser for its assets.

10. Upon entering into negotiations with Safety Vision it became clear that to facilitate a sale it would be necessary to do so utilizing the provisions of the Bankruptcy Code. Thus, the Debtor filed this case to provide a sale free and clear of liens, which would, in turn, expedite the sale process and preserve the remaining value of the company.

**Marketing Efforts**

11. The Debtor marketed its business for several months. After negotiations with several entities failed to come to fruition, Safety Vision entered into a *Letter of Intent* with Safety Vision ("**the LOI**"). A true and correct copy of the LOI is attached as Exhibit A and made a part hereof for all purposes. All initially capitalized terms used herein shall have the same meaning assigned in the LOI. The LOI contemplates prompt Court approval of the LOI and the Purchaser Protection Provisions. The LOI further contemplates that Safety Vision will provide Debtor-in-Possession financing, contingent on court approval of both the LOI and the DIP Credit Agreement. The Debtor has filed a separate motion seeking approval of the DIP Credit Agreement.

12. Safety Vision, LLC was founded as a limited liability company by Bruce H. Smith in 1993 under the laws of the State of Texas. Neither Safety Vision nor Bruce Smith have any connection with the Debtor other than their interest in purchasing the Debtor's Assets.

13. The Debtor and Safety Vision are currently negotiating the terms of a more definitive asset purchase agreement ("**the Asset Purchase Agreement**"). The final form of the Asset Purchase Agreement will be filed prior to the final hearing on this motion. The LOI and Asset Purchase Agreement are subject to higher and better offers. Under the LOI and Asset Purchase Agreement, the Debtor has agreed to seek approval of a sale procedure and form of notice and certain bid protections as more fully set forth below.

14. As provided in the LOI, the Debtor will file a motion to sell all assets of the Debtor under § 363(f) of the Bankruptcy Code pursuant to the terms set forth in the LOI and Asset Purchase Agreement ("**the Sale Motion**").

**Approval of LOI, The Sale Procedure and Form of Notice**

15. Pursuant to the terms of the LOI, the Debtor hereby seeks approval of the LOI and the Purchaser Protection Provisions. Approval of the LOI will facilitate the sale process and will make Safety Vision the "stalking horse" with certain Purchaser Protection Provisions in the event it is overbid.

16. The Debtor seeks approval of the following sale procedure and form of notice:

> **Notice of Sale Hearing**. Within five (5) business days following the entry of an order approving this motion, the Debtor will serve, by first class mail, a notice containing the date of the final sale hearing. This notice shall be directed to (i) all potential purchasers that have expressed an interest to the Debtor in purchasing the Assets ("**the Potential Purchasers**"); (ii) the Office of the United States Trustee; (iii) counsel for Safety Vision; (iv) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Assets (as defined in the Asset Purchase Agreement); (v) all applicable United States, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested in the Sale Motion; and (vi) all parties on the most current master service list filed in this

case. The Debtor shall also, if feasible, advertise the sale in the Midwest edition of the Wall Street Journal, either in print, online or both.

**Qualified Bidders**. Only Qualified Bidders may participate in the bidding process. To become a Qualified Bidder, a potential bidder must on or before 5:00 p.m. Central Standard Time, on that date which is at least five (5) days prior to the date on which the Court has scheduled the hearing on the motion to sell the Debtor's Assets (i) execute and deliver to the Debtor's counsel a confidentiality agreement prepared by the Debtor, (ii) deposit with the Debtor the sum of $10,000.00 ("**the Deposit**") which Deposit shall be nonrefundable unless such Qualified Bidder does not tender the highest and best offer as determined by the Court; (iii) submit to the Debtor an unqualified and binding bid in the minimum amount of $1,000,000.00 cash, plus fifty percent (50%) of the Accounts, along with an executed written agreement substantially in the form of the Asset Purchase Agreement ("**Qualified Bids**"); and (iv) provide financial and other information to the Debtor that allows the Debtor to make a reasonable determination as to such bidder's ability to consummate a sale as contemplated herein. Safety Vision is and shall be deemed to be a Qualified Bidder and a party in interest for all purposes, and does not need to take any further action to become a Qualified Bidder. If no other Qualified Bidders are identified, the LOI and Asset Purchase Agreement between the Debtor and Safety Vision shall be deemed the Highest and Best Bid (as defined below). No letter of intent or other written proposal submitted to the Debtor prior to the filing of this motion by any party other than Safety Visions hall constitute or be considered a Qualified Bid for purposes of these sale procedures. The Debtor shall be responsible for conducting the bid and sale process.

**Notice of Qualified Bidders**. On or before 5:00 p.m. Central Standard Time on that date which is at least two (2) days prior to the date on which the Court has scheduled the hearing on the motion to sell the Debtor's Assets, the Debtor shall file a notice with the Court identifying all Qualified Bidders and attaching copies of all bids that were timely received. All bids by the Debtor shall be shared with counsel for Safety Vision. The Debtor shall serve a copy of the notice and the corresponding bids on all Qualified Bidders by (a) facsimile or electronic mail or (b) overnight delivery.

**Auction**. If one or more timely Qualified Bids are received, an auction for the Purchased Assets will be conducted on ______________________, 2011, commencing at _____________.m. Central Standard Time at the U.S. Bankruptcy Court, United States Courthouse, Room 151, 500 State Avenue, Kansas City, Kansas, 66101. Only Qualified Bidders may participate in the auction. All

Qualified Bidders, or their authorized representatives, must be physically present at the auction. At the commencement of the auction, the Debtor shall announce the bidding order, which shall be based on: (i) the amount of the Qualified Bidder's bid (from low to high); and (ii) if Qualified Bids are identical, the time the Qualified Bids were delivered to the Debtor (the first such received identical bid going first in the auction); *provided, however*, that Safety Vision shall bid last in any bidding round in which it participates. The Minimum overbid increments at the auction shall be in the amount of not less than $100,000.00.

**Selection of the Highest and Best Bid**. At the conclusion of the auction, the Debtor will announce the highest and best Qualified Bid ("**the Highest and Best Bid**") and the next highest and best Qualified Bid ("**the Back-Up Bid**"). The Debtor will seek approval of the Highest and Best Bid at the final sale hearing. If for any reason, the Qualified Bidder submitting the Highest and Best Bid fails to timely consummate the purchase of the Purchased Assets, the Debtor may seek to consummate a sale based on the Back-Up Bid without further approval by the Court. The Back-Up Bid and the obligation of the party submitting such bid to consummate the purchase of the Purchased Assets shall remain open and in full force until the close of a sale of the Purchased Assets to the party making the Highest and Best Bid or the party making the Back-Up Bid.

**Return of Deposits**. Within two business days after the conclusion of the auction described above, the Debtor shall return by check the full amount of the Deposit tendered by each Qualified Bidder whose bid was not selected as either the Highest and Best Bid or the Back-Up Bid (or Purchaser's Deposit, as defined in the LOI if Safety Vision is the holder of neither the Highest and Best Bid or the Back-Up Bid). If the sale of the Purchased Assets is consummated with the party submitting the Highest and Best Bid, the Deposit (or Purchaser's Deposit, if applicable) of the party that is declared the Back-Up Bid shall be returned by check within two business days after the closing of the sale to the party submitting the Highest and Best Bid.

17. The foregoing sale procedure provides an appropriate framework to ensure that the Debtor's goal of obtaining the maximum value for the Assets is realized. The proposed process is transparent and represents a fair balance of the competing issues present in this case.

**Requested Break-Up Fee**

18. In connection with the LOI and Asset Purchase Agreement, the Debtor seeks approval of certain Purchaser Protection Provisions, including, without limitation, (i) an $80,000.00 break-up fee ('**the Break-Up Fee**") or Termination Fee ("**the Termination Fee**", and (ii) reimbursement of reasonable expenses up to $50,000.00 ("**the Reimbursable Expenses**"). The Break Up Fee, Termination Fee and Reimbursable Expenses shall be due in accordance with the terms of the LOI. However, the Reimbursable Expenses shall be paid only upon presentation to Debtor of a full and complete accounting for such expenses.

19. The Debtor believes that the Purchaser Protection Provisions are appropriate under the circumstances as a cost of ensuring that the Debtor's bankruptcy estate maximizes value for the Assets, while also providing the Debtor with the opportunity to continue its marketing efforts. The Debtor believes that the amount of the Break-Up Fee and/or Termination Fee and Reimbursable Expenses is reasonable for a transaction of the type and size contemplated. As set forth in the LOI, the maximum fees due to Safety Vision total $130,000.00, which is approximately 10% of the aggregate purchase price as described in the LOI,

20. The determination of whether a break-up fee should be allowed is based on whether the fees and expenses are necessary to preserve the value of the estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999). Courts have evaluated break-up fee arrangements under the business judgment rule standard. *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422

(S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993); *see also In re Twenver, Inc.*, 149 B.R. 954 (Bankr. D. Colo. 1992). The considerations that underlie a debtor's business judgment to pay a break-up fee are relevant to the Court's determination of the request. *Id.*

**Time is of the Essence**

21. The Debtor is no longer operating. Maintaining the value of its Assets for a potential purchaser is vital to recovery of the maximum purchase price possible. Thus, the terms of the LOI require that this motion be approved by January 25, 2011. However, Safety Vision has extended this date to January 28, 2011, the date on which it is anticipated that this motion will be heard.

22. The LOI further requires that a Final Order approving the Asset Purchase Agreement and the sale of the Assets shall be entered on or before March 15, 2011. Time is of the essence in obtaining approval of this motion to enable the (i) Debtor to commence advertising the sale of its Assets and (ii) Court to attempt to accommodate the March 15, 2011, deadline.

23. The Debtor therefore, requests an expedited hearing on this Motion.

**Notice Of This Motion**

24. Notice of the hearing on this Motion, with a copy of the Motion, will be served on the following entities and/or their counsel: (1) the Office of the United States Trustee; (2) Safety Vision, LLC; (3) the Securities and Exchange Commission; (4) the Internal Revenue Service; (5) the offices of the Attorneys General for the States of Washington, Minnesota, North Carolina,

South Carolina and California; (6) the offices of the Treasurers for the States of Washington, Minnesota, North Carolina, South Carolina and California; and (7) holders of the Debtor's 20 largest unsecured claims (collectively, **"the Initial Master Service List**") by facsimile if known, otherwise by overnight mail or email. In addition, the Debtor will serve a copy of this Motion with the notice of hearing for this Motion by facsimile, if known, otherwise by overnight mail, on those creditors that the Debtor is aware of and believes may hold a security interest in the Debtor's assets.

WHEREFORE, the Debtor requests that the Court (1) approve the (i) Letter of Intent and Purchaser Protection Provisions, and (ii) Sale Procedure, Form of Notice, and Certain Bid Protections, all as outlined herein; and (2) grant the Debtor such other and further relief as the Court deems just and equitable.

Respectfully Submitted:

EVANS & MULLINIX, P.A.

*/s/ Joanne B. Stutz*
Joanne B. Stutz, KS #12365; MO #30820
7225 Renner Road, Suite 200
Shawnee, KS 66217
(913) 962-8700; (913) 962-8701 (Fax)
jbs@evans-mullinix.com
*Attorneys For Debtor*